In re BURNHAM.
Patent Appeal No. 2780.

Court of Customs and Patent Appeals.
Nov. 27, 1931.

Redding, Greeley, O'Shea & Campbell, of New York City (Arthur P. Greeley, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Burnham has appealed from a decision of the Board of Appeals of the Patent Office affirming the decision of the Examiner rejecting his three claims for alleged "Improvements in Construction of Fireplaces."

The claims are as follows:

"7. A fireplace structure comprising separately formed hollow structural elements each having a front wall and a back wall spaced apart, the several structural elements being of differing shapes so as to present respectively the outer walls of the joints, the fireback and the throat of a fireplace, the structural elements being adapted to be so assembled as to present the outer walls of a complete fireplace with the hollows of the several elements in communication adapted to receive a plastic binder to fill the hollows, seal the interstices between the elements, and form an integral or monolithic whole.

"8. A fireplace structure having its walls formed of spaced slabs of nonmetallic heat-resistant plastic material with means to retain the slabs in position.

"9. A fireplace structure having its walls of spaced slabs of concrete and a concrete filling in the spaces between the slabs and adherent thereto."

The rejection was for lack of invention in view of prior art as represented in patent 1,501,986 of July 22, 1924, to W. L. Evans, Jr., for "Building Construction," and a British patent to J. W. Taylor et al., for "Improvements in Fireplaces," No. 183,055, issued July 20, 1922.

It will be observed that appellant's claim 7 is a broad claim which contains no limitation as to the material that may be used in forming the slabs of which the walls, etc., of the fireplace are to be constructed, claim 8 limits the material to nonmetallic, heat-resistant, plastic material, and claim 9 limits it to concrete.

The Evans patent discloses the use of metal forms to serve as facings or skins which are to become permanent parts of the structure; "concrete or some similar cementitious material" being used as filling-in material. His specifications mention only "wall, floor, ceiling, or column" structures, no specific mention being made of fireplaces, but the claims are apparently sufficiently broad to cover any sort of building structure in which the elements recited can be used.

The British patent to Taylor et al. relates to fireplaces " * * * of a kind intended to receive an artistic dog-grate and in which the construction is substantially of the self-contained type, that is, adapted to be introduced or built-up complete in a suitable cavity or recess and to suit or combine with a normal flue outlet."

It is built up from cast-iron portions, the space between certain webs and the side plates forming pockets which are "filled up

with slag wool, concrete, mortar, sand or the like."

It does not seem to us that the struc-. ture of appellant evidences invention over the disclosures of the patents cited.

█ In the brief for appellant considerable emphasis is placed upon the factors of novelty and utility. These are elements proper to be considered in determining whether the matter presented in the claims constitutes invention, but they are not conclusive of invention. In Thompson et al. v. Boisselier et al., 114 U. S. 1, 11, 5 S. Ct. 1042, 1047, 29 L. Ed. 76, the Supreme Court said: "* * * So, it is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the constitution and the statute, amount to an invention or discovery."

█ Many authorities to the same effect might be cited. It is elemental in patent law that, in order to justify the granting of a patent or to sustain it in the courts after it is granted, the production of the article must have called for the exercise of the inventive faculties.

█ Considerable space in appellant's brief is devoted to comment upon the appearance of the Solicitor for the Patent Office before the court and his participation by brief and oral argument in the ex parte cases appealed here.

After reviewing certain provisions of the acts of 1836 and 1870, the brief says: "The statute does not impose upon the Commissioner the duty of opposing the allowance of the patent prayed for."

And again: "It was only on appeals to the Court of Appeals of the District of Columbia that the practice of a lower tribunal being permitted to contest an ex parte appeal was countenanced and for this practice there is no authority in the Statutes."

Indeed the tenor of the brief seems to be that the law "does not make the Commissioner a party to an ex parte appeal or authorize his appearance before the court, * * *" and that "the statute not only does not permit the Commissioner to be represented on an appeal from his decision * * * but by exclusion forbids his presence before the court. * * *"

In view of these comments this court deems it proper to say that we regard the appearance of the Solicitor for the Patent Office in the capacity in which he appears in these ex parte cases as being in entire accord with the statute.

It is provided in section 4913, R. S. as amended, 35 USCA § 61, that: "* * * The party appealing shall lay before the court certified copies of all the original papers and evidence in the case, and the commissioner shall furnish the court with the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal."

It has, we think, been very generally felt by the courts that the briefs and oral arguments by the Solicitor for the Patent Office are in explanation and amplification of the "grounds of decision" as said grounds are stated in the opinions formerly handed down by the Commissioner of Patents but now (since the act of March 2, 1927, c. 273, § 5, 44 Stat. 1336 [35 USCA § 57]) by the Board of Appeals.

"All the points involved by the reasons of appeal" to this court are made known for the first time by the party appealing when he takes the formal appeal, and the statute would seem necessarily to imply a discussion of these on the part of the Commissioner after they have been formally set forth by an appellant.

The practice was in vogue throughout the entire period during which the Court of Appeals of the District of Columbia exercised the jurisdiction which this court now has, and even prior to that time. We have not endeavored to trace the custom to its origin, but it is one sanctioned by long usage, and is certainly justified, whether or not mandatorily required, by the statute. We have found the services of the Solicitor and his associate of material aid to us in our efforts to ascertain the facts and properly apply the law in this highly technical field of jurisprudence.

Because of lack of invention on the part of applicant over the prior art cited, we feel that the decision of the Board of Appeals was correct, and same is affirmed.

Affirmed.